IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

DAVID DANEK,

Plaintiff,

v.

FN AMERICA, LLC a/k/a FNH USA, LLC

and UMAREX USA, INC.

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW, Plaintiff David Danek, by and through his attorneys, BURG SIMPSON

ELDREDGE HERSH & JARDINE, P.C., and for his Complaint and Jury Demand, states,

alleges, and avers as follows:

## PARTIES

1. Plaintiff David Danek (hereinafter "Plaintiff") is an adult resident of Colorado.

2. Defendant, FN America, LLC, also known as FNH USA, LLC, is a limited liability company organized and existing pursuant to the laws of Delaware with a principal place of business located at 7950 Jones Branch Drive, Suite 602N, McLean, Virginia, 22102.

3. Defendant Umarex USA, Inc. is a foreign corporation organized and existing pursuant to the laws of New Jersey with a principal place of business located at 7700 Chad Colley Blvd.,

Fort Smith, Arkansas, 72916 and its registered agent CT Corporation System located at 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332.

5. The amount in controversy exceeds $75,000.00 and Plaintiff and Defendants are citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District of Colorado.

7. The Court has personal jurisdiction over Defendants by virtue of their transaction of business within the State of Colorado, by virtue of their commission of tortious acts in Colorado that caused injury and damages in Colorado, by virtue of their ownership, use, or possession of real property situated in the State of Colorado, and/or by otherwise purposefully availing themselves of the benefits and privileges of Colorado law by regular, continuous, and systematic contacts with Colorado.

## FACTUAL ALLEGATIONS

8. Plaintiff is a Fire Lieutenant and Paramedic for Aurora Fire Rescue.

9. Plaintiff is also a lifelong outdoorsman, with decades of experience with firearms, small and large-game hunting, and alpine hiking.

10. Defendant FN America, LLC (hereinafter, "Defendant FN America") is a global developer and manufacturer of firearms for military, law enforcement, and commercial uses.

11. Defendant Umarex USA, Inc. (hereinafter, "Defendant Umarex USA") is a leading manufacturer and supplier of recreational outdoor sporting goods including air guns, pistols, rifles.

12. Defendant Umarex USA has dealers across the United States that sell its products, with more than thirty (30) dealers located within the State of Colorado.

13. Defendant Umarex USA holds a license for the importation of firearms through the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosions ("ATF"), license number 5-71-131-084J-01530.

14. Pursuant to information on file with the ATF, Defendant Umarex USA rents and/or leases a warehouse premises located at 7700 Chad Colley Blvd., Fort Smith, Arkansas 72916.

15. Defendant FN America holds a license for importing destructive devices through the ATF, license number 1-54-179-116D-13766.

16. Pursuant to information on file with the ATF, Defendant FN America's registered premises for importing destructive devices in connection with license number 1-54-179-116D-13766 is located at 14 Hazel Park Lane, Fredericksburg, VA 22405.

17. Defendant FN America holds another license for importing destructive devices through ATF, license number 1-57-079-116A-01194.

18. Defendant FN America holds a license for manufacturing destructive devices through ATF, license number 1-57-079-104M-02581.

19. Pursuant to information on file with the ATF, Defendant FN America's registered premises for manufacturing and importing destructive devices in connection with license numbers 1-57-079-116A-01194 and 1-57-079-104M-02581 is located at 797 Old Clemson Road, Columbia, SC 29229-4203.

3

**The Subject Firearm**

20. At all times relevant hereto, Defendants FN America was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing firearms, including, but not limited to, FN 502 Tactical pistols.

21. Defendant FN America designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective firearm that caused injury to Plaintiff (hereinafter "Subject Firearm").

22. At all times relevant hereto, Defendants Umarex USA was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing firearms, including, but not limited to, FN 502 Tactical pistols.

23. Defendant Umarex USA designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective firearm that caused injury to Plaintiff (hereinafter "Subject Firearm").

24. FN 502 Tactical pistols are advertised by Defendant FN America as the "Industry's first slide-mounted optics-ready .22 LR pistol."

25. Defendant FN America further advertised:

    a. "The FN 502 Tactical isn't just the first .22 LR from FN, it's the industry's first slide-mounted, optics-ready rimfire handgun that's ever existed."

    b. "Designed for maximum fun, FN's hammer-fired .22 LR delivers more accuracy and versatility than any other rimfire. Mounting a favorite red dot optic and cycling a wide range of .22 LR ammo makes a low-cost range day a high-end experience."

4

c. "Like a robust target-style rimfire pistol, the design of the FN 502 Tactical delivers faster, more accurate shots on target from a modern, optics-ready tactical pistol."

26. FN 502 Tactical pistols are designed to include a 4.6" barrel, single-action hammer, manual safety, and 5 lbs. trigger pull.

27. At or around the time Plaintiff purchased the Subject Firearm, Defendant FN America's public website for 502 pistols advertised, "Best-in-class trigger breaks cleanly at ≈ 5lbs."

28. On its public website, Defendant FN America advertises that it "is committed to quality management system excellence and continuous improvement in everything that we do."

**The Recall of FN 502 Tactical Pistols**

29. On January 27, 2022, Defendant FN America issued a "Safety Bulletin" concerning a limited number of FN 502 Tactical pistols.

30. The Safety Bulletin stated that the company "has become aware that a very limited number of FN 502 Tactical pistols in the field may have an improperly installed manual safety. In these cases, the safety lever will not function as designed and may result in unintended firing."

31. Instead of issuing an immediate recall, Defendant FN America's "Safety Bulletin" placed to onus on consumers to verify whether the firearms they had purchased were defective by completing a dangerous, vaguely worded six-step inspection process.

32. On or about March 17, 2022, Defendant FN America announced a safety recall for the FN 502 Tactical .22LR pistol (hereinafter "the Recall"), which was previously the subject of Defendant FN America's January 27, 2022 "Safety Bulletin."

33. In the Recall, Defendant FN America explained that "[t]he original concern involved a missing manual safety lock lever in a small number of FN 502 Tactical pistols that would

5

allow the discharge of the pistol when the trigger is pulled with the manual safety in the SAFE position. While investigating this issue with Umarex, the supplier of the FN 502 Tactical, we encountered a separate concern with proper installation of the manual safety lock lever. Consequently, if forced by multiple pulls of the trigger in succession, or if the pistol is jarred, an unintended firing may happen when the manual safety is in the SAFE position."

34. "FN 502 Tactical pistols with a serial number lower than LR010300 are subject to this recall."

35. In the FAQ section, Defendant FN America states, "This newly-discovered issue is separate from the missing manual safety lock lever issue that was the subject of the original safety bulletin."

### Revisions to the FN 502 Tactical Pistol Manual

36. Defendant FN America released a revised Manual for the FN 502 Autoloading Pistol in November 2024.

37. In the Original Manual for the FN 502 Autoloading Pistol released in July 2022, Part number 66-101193 ("Safety Right") and Part number 66-101191 ("Safety Left") are not listed as being under the umbrella of the "Fire Control Assembly SP" (Pos. No. A11), but rather the "Optics Kit" (Pos. No. A13).

38. However, in the Revised Manual, Part number 66-101193 ("Safety Right") and Part number 66-101191 ("Safety Left") are removed from the umbrella of the Optics Kit and are instead placed under the umbrella of the "Fire Control Assembly SP" (Pos. No. A11).

39. The drawing on page 59 of the Revised Manual provides a visual representation of the changes Defendant FN America made to the Fire Control Assembly SP (Pos. No. A11).

6

40. The drawing on page 28 of the Revised Manual provides a visual representation of the changes Defendant FN America made to the Slide Cap Assembly (Pos. No. A2 of the Revised Manual).

41. The Revised Manual provides:

    a. "The FN 502 has a Single Action hammer fired firing mechanism. This means that pulling the trigger performs a single action, dropping the hammer. The hammer must be cocked to fire the FN 502. Retracting the slide to load the pistol also cocks the hammer making the pistol ready to fire."

    b. "When the trigger is pulled the firing pin block is disconnected and the hammer is released to rotate forward striking the firing pin which then strikes the primer of the loaded cartridge, firing the pistol.

    c. "The FN 502 is equipped with two passive safety systems: a firing pin block and trigger disconnect this prevents the pistol from firing unless the trigger is pulled and the slide and barrel are in the closed position."

    d. "The trigger disconnect safety is actuated when the trigger bar is pushed out of alignment with the sear preventing the sear from releasing the hammer. This safety feature prevents the pistol from firing out of battery."

    e. "FN 502 pistol is equipped with a manually activated safety that prevents the pistol from firing unless it is deactivated. The safety levers are located near the rear of the frame. When the safety levers are moved to the up position, the safety is engaged and blocks the movement of the sear and trigger assembly. When the safety levers are moved down the red dot indicating that the pistol will fire is exposed and the firing

mechanism is free to operate. The safety lever is retained in the selected position by a detent and will snap into location when engaged or disengaged."

42. The Original Manual contained a bold, all-caps notice stating "NOTICE! THE SAFETY OF THE FN 502 CANNOT BE ENGAGED WHEN THE HAMMER IS IN THE FIRE (FORWARD) POSITION."

43. In the Revised Manual, the notice referenced in the preceding paragraph is deleted.

### The Incident

44. On December 12, 2023, Plaintiff purchased an FN 502 Tactical .22LR Pistol.

45. On September 17, 2024, at approximately 7:55 a.m., Plaintiff was hunting in Gunnison, Colorado.

46. Plaintiff had the Subject Firearm secured inside a holster carrier with the manual safety activated.

47. Plaintiff affixed the holstered Subject Firearm to the waist strap of his backpack.

48. Plaintiff placed his backpack with the Subject Firearm affixed on a flat rock on the steep hillside, approximately three feet above him, while he glassed the terrain, which includes intensively scouring large areas of terrain from a high vantage point,

49. After glassing the terrain, Plaintiff was standing turned away from his backpack.

50. While Plaintiff was standing on a hillside after glassing the terrain sending a text message from his wife, Plaintiff heard his backpack begin to slide down the hillside.

51. As Plaintiff turned his body towards his sliding backpack, Plaintiff heard a gunshot and felt his leg go numb, causing him to fall to the ground.

52. The Subject Firearm discharged with the safety activated and without the trigger being pulled (hereinafter "the Incident").

53. The discharged bullet fired through Plaintiff's left proximal inner thigh.

54. Plaintiff screamed for help and asked for a tourniquet, then pressed the SOS activation button on his Garmin watch.

55. As Plaintiff's friend grabbed a tourniquet for Plaintiff's wound, Plaintiff grabbed his backpack, and clearly saw that the Subject Firearm's safety was still activated.

56. After being shot in the left proximal inner thigh, Plaintiff was forced to hike for approximately .8 miles to meet the helicopter for evacuation to the hospital.

57. The .8 mile hike downhill took Plaintiff more than an hour to complete.

58. Plaintiff was evacuated by helicopter to the nearest emergency room.

59. Shortly after the Incident, Plaintiff was admitted to the Emergency Room at St. Mary's Regional Hospital in Grand Junction, CO for pain management and monitoring and was required to stay overnight.

60. As a direct and proximate result of the Incident, Plaintiff suffered numbness in his left lower extremity, extending from the knee to the foot.

61. As a direct and proximate result of the Incident, Plaintiff was required to undergo physical and occupational therapy.

62. To date, the discharge bullet remains lodged in Plaintiff's gluteal muscle.

## FIRST CLAIM FOR RELIEF
**Strict Product Liability – Design Defect**
Plaintiff v. Defendant FN America, LLC

63. Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

64. At all relevant times hereto, Defendant FN America was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing firearms to consumers.

65. Defendant FN America designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

66. The Subject Firearm was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by Defendant FN America in the following ways:

    a. The Subject Firearm was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

    b. The Subject Firearm was defectively designed in a manner that created an unreasonable propensity for it to discharge and/or fire with the manual safety mechanism in the "SAFE" position and whilst not in use by its handler;

    c. The Subject Firearm was defectively designed in that it fails to operate as marketed and advertised;

    d. The Subject Firearm was defectively designed in that it lacks warnings, instructions, stickers, placards, and/or notices necessary to alert users regarding the hazardous conditions described herein;

    e. The Subject Firearm was defectively designed in that it will unintentionally discharge and/or fire with the manual safety mechanism in the "SAFE" position; and

f. The Subject Firearm was defectively designed in that it fails to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

67. The Subject Firearm was not misused post-sale before it failed.

68. The Subject Firearm was not modified post-sale before it failed.

69. The Subject Firearm was within its anticipated useful life when it failed.

70. The Subject Firearm failure was such that it would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

71. As a direct, proximate, and foreseeable result of Defendant FN America's negligence, Plaintiff suffered the injuries, damages, and losses described herein.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Strict Product Liability – Design Defect**
Plaintiff v. Defendant Umarex USA, Inc.

72. Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

73. At all relevant times hereto, Defendant Umarex USA was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing recreational sporting goods.

74. Defendant Umarex USA designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

75. The Subject Firearm was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold,

11

advertised, marketed, and placed into the stream of commerce by Defendant Umarex USA in the following ways:

    a. The Subject Firearm was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

    b. The Subject Firearm was defectively designed in a manner that created an unreasonable propensity for it to discharge and/or fire with the manual safety mechanism in the "SAFE" position and whilst not in use by its handler;

    c. The Subject Firearm was defectively designed in that it fails to operate as marketed and advertised;

    d. The Subject Firearm was defectively designed in that it lacks warnings, instructions, stickers, placards, and/or notices necessary to alert users regarding the hazardous conditions described herein;

    e. The Subject Firearm was defectively designed in that it will unintentionally discharge and/or fire with the manual safety mechanism in the "SAFE" position;

    f. The Subject Firearm was defectively designed in that it fails to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

76. The Subject Firearm was not misused post-sale before it failed.

77. The Subject Firearm was not modified post-sale before it failed.

78. The Subject Firearm was within its anticipated useful life when it failed.

79. The Subject Firearm failure was such that it would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

80. As a direct, proximate, and foreseeable result of Defendant Umarex USA's negligence, Plaintiff suffered the injuries, damages, and losses described herein.

**THIRD CLAIM FOR RELIEF**
**Strict Product Liability – Manufacturing Defect**
Plaintiff v. Defendant FN America, LLC

81. Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

82. At all relevant times hereto, Defendant FN America was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing firearms.

83. Defendant FN America designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

84. The Subject Firearm was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by Defendant FN America in the following ways:

    a.  The Subject Firearm was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

    b.  The Subject Firearm was defectively manufactured in a manner that created an unreasonable propensity for it to discharge and/or fire with the manual safety mechanism in the "SAFE" position and whilst not in use by its handler;

13

c.  The Subject Firearm was defectively manufactured in that it fails to operate as marketed and advertised;

d.  The Subject Firearm was defectively manufactured in that it lacks warnings, instructions, stickers, placards, and/or notices necessary to alert users regarding the hazardous conditions described herein;

e.  The Subject Firearm was defectively manufactured in that it will unintentionally discharge with the manual safety mechanism in the "SAFE" position; and

f.  The Subject Firearm was defectively manufactured in that it fails to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

85. The Subject Firearm was not misused post-sale before it failed.

86. The Subject Firearm was not modified post-sale before it failed.

87. The Subject Firearm was within its anticipated useful life when it failed.

88. The Subject Firearm failure was such that it would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

89. As a direct, proximate, and foreseeable result of Defendant FN America's negligence, Plaintiff suffered the injuries, damages, and losses described herein.

**FOURTH CLAIM FOR RELIEF**
**Strict Product Liability – Manufacturing Defect**
Plaintiff v. Defendant Umarex USA, Inc.

90. Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

14

91. At all relevant times hereto, Defendant Umarex USA was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing firearms.

92. Defendant Umarex USA designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

93. The Subject Firearm was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by Defendant Umarex USA in the following ways:

a. The Subject Firearm was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

b. The Subject Firearm was defectively manufactured in a manner that created an unreasonable propensity for it to discharge and/or fire with the manual safety mechanism in the "SAFE" position and whilst not in use by its handler;

c. The Subject Firearm was defectively manufactured in that it fails to operate as marketed and advertised;

d. The Subject Firearm was defectively manufactured in that it lacks warnings, instructions, stickers, placards, and/or notices necessary to alert users regarding the hazardous conditions described herein;

e. The Subject Firearm was defectively manufactured in that it will unintentionally discharge and/or with the manual safety mechanism in the "SAFE" position;

f.  The Subject Firearm was defectively manufactured in that it fails to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

94. The Subject Firearm was not misused post-sale before it failed.

95. The Subject Firearm was not modified post-sale before it failed.

96. The Subject Firearm was within its anticipated useful life when it failed.

97. The Subject Firearm failure was such that it would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

98. As a direct, proximate, and foreseeable result of Defendant Umarex USA's negligence, Plaintiff suffered the injuries, damages, and losses described herein.

**FIFTH CLAIM FOR RELIEF**
**Product Liability – Negligence**
Plaintiff v. Defendant FN America, LLC

99. Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

100.    At all relevant times hereto, Defendant FN America was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing firearms.

101.    Defendant FN America designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

102.    As a firearm manufacturer and seller, Defendant FN America owed a duty to Plaintiff and other consumers to properly design, test, maintain, assemble, source, import, manufacture,

16

inspect, sell, advertise, market, and distribute the Subject Firearm in a reasonably safe condition so as to prevent the unreasonable risk of injury to persons.

103.    Defendant FN America breached the aforementioned duty by negligently designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and distributing the Subject Firearm when it was not in a reasonably safe condition for foreseeable use, as follows:

   a.   The Subject Firearm was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

   b.   The Subject Firearm was designed, manufactured, distributed, marketed, sold and/or supplied in an unsafe, unreasonably dangerous, and defective condition that had an unreasonable propensity to discharge and/or fire with the manual safety in the engaged position;

   c.   The Subject Firearm failed to operate as advertised and marketed;

   d.   The Subject Firearm and its associated manual and marketing materials failed to alert users to the hazardous conditions described herein;

   e.   The Subject Firearm was defective due to inadequate warnings or instructions, including warning stickers, placards, or other documentation to alert users regarding the hazardous conditions described herein;

   f.   Defendant FN America failed to provide warnings of the aforementioned defects known or knowable in light of the prevailing scientific and technical knowledge;

   g.   The Subject Firearm failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

h.  The Subject Firearm is capable of unintentionally discharging and/or firing with the manual safety mechanism in the "SAFE" position;

i.  At the time of the Incident the Subject Firearm failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

104.  As a direct, proximate, and foreseeable result of the Defendant FN America's negligence, Plaintiff suffered the injuries, damages, and losses described herein.

### SIXTH CLAIM FOR RELIEF
**Product Liability – Negligence**
Plaintiff v. Defendant Umarex USA, Inc.

105.  Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

106.  At all relevant times hereto, Defendant Umarex USA was and is engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing firearms.

107.  Defendant Umarex USA designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

108.  As A firearm manufacturer and seller, Defendant Umarex USA owed a duty to Plaintiff and other consumers to properly design, test, maintain, assemble, source, import, manufacture, inspect, sell, advertise, market, and distribute the Subject Firearm in a reasonably safe condition so as to prevent the unreasonable risk of injury to persons.

109.  Defendant Umarex USA breached the aforementioned duty by negligently designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling,

18

advertising, marketing, and distributing the Subject Firearm when it was not in a reasonably safe condition for foreseeable use, as follows:

a. The Subject Firearm was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

b. The Subject Firearm was designed, manufactured, distributed, marketed, sold and/or supplied in an unsafe, unreasonably dangerous, and defective condition that had an unreasonable propensity to discharge and/or fire with the manual safety in the engaged position;

c. The Subject Firearm failed to operate as advertised and marketed;

d. The Subject Firearm and its associated manual and marketing materials failed to alert users to the hazardous conditions described herein;

e. The Subject Firearm was defective due to inadequate warnings or instructions, including warning stickers, placards, or other documentation to alert users regarding the hazardous conditions described herein;

f. Defendant Umarex USA failed to provide warnings of the aforementioned defects known or knowable in light of the prevailing scientific and technical knowledge;

g. The Subject Firearm failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

h. The Subject Firearm is capable of unintentionally discharging and/or firing with the manual safety mechanism in the "SAFE" position;

19

i.    At the time of the Incident the Subject Firearm failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

110.    As a direct, proximate, and foreseeable result of the Defendant Umarex USA's negligence, Plaintiff suffered the injuries, damages, and losses described herein.

111.    As a direct, proximate, and foreseeable result of the Defendant FN America's breaches of warranties, Plaintiff suffered the injuries, damages, and losses described herein.

**SEVENTH CLAIM FOR RELIEF**
**Violations of the Colorado Consumer Protection Act – C.R.S. § 6-1-101**
Plaintiff v. Defendant FN America, LLC

112.    Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

113.    At all relevant times hereto, Defendant FN America was engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing the firearms.

114.    Defendant FN America designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

115.    Defendant FN America engaged in the following defective trade practices:

a.    Defendant FN America sold and continued to sell the defective and dangerous FN 502 Tactical pistols to unwitting consumers, including Plaintiff, despite having actual knowledge of dangerous defects;

b.    Defendant FN America made false representations with respect to the characteristics, uses, and benefits of the FN 502 Tactical pistols;

20

c. Defendant FN America failed to warn consumers, including Plaintiff, that FN 502 Tactical pistols had been reported to have discharged and/or fired when the manual safety was engaged and in the SAFE position;

d. Defendant FN America failed to warn consumers, including Plaintiff, that FN 502 Tactical pistols had been reported to have unintentionally discharged and/or fired during normal and/or foreseeable jostling conditions;

e. Defendant FN America failed to disclose material information concerning the defective and dangerous propensities of FN 502 Tactical pistols with the intent of inducing customers into purchasing said FN 502 Tactical pistols;

f. Defendant FN America deliberately misled customers and induced them to purchase FN 502 Tactical pistols despite having direct knowledge of their defective and dangerous propensities;

g. Defendant FN America failed to conduct a reasonably prompt recall of FN 502 Tactical pistols despite having direct knowledge of their defective and dangerous propensities;

116. The aforementioned deceptive trade practices occurred in the course of Defendant FN America's business.

117. The aforementioned deceptive trade practices impacted the public as actual or potential consumers of FN 502 Tactical pistols.

118. As a direct, proximate, and foreseeable result of the Defendant FN America's deceptive trade practices, Plaintiff suffered the injuries, damages, and losses described herein.

**EIGHTH CLAIM FOR RELIEF**
**Violations of the Colorado Consumer Protection Act – C.R.S. § 6-1-101**
Plaintiff v. Defendant Umarex USA, Inc.

21

119.	Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

120.	At all relevant times hereto, Defendant Umarex USA was engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, selling, advertising, marketing and/or distributing the firearms.

121.	Defendant Umarex USA designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Firearm that caused injury to Plaintiff.

122.	Defendant Umarex USA engaged in the following defective trade practices:

   a.	Defendant Umarex USA sold and continued to sell the defective and dangerous FN 502 Tactical pistols to unwitting consumers, including Plaintiff, despite having actual knowledge of dangerous defects;

   b.	Defendant Umarex USA made false representations with respect to the characteristics, uses, and benefits of the FN 502 Tactical pistols;

   c.	Defendant Umarex USA failed to warn consumers, including Plaintiff, that FN 502 Tactical pistols had been reported to have discharged when the manual safety was engaged and in the SAFE position;

   d.	Defendant Umarex USA failed to warn consumers, including Plaintiff, that FN 502 Tactical pistols had been reported to have unintentionally fired during normal and/or foreseeable jostling conditions;

   e.	Defendant Umarex USA failed to disclose material information concerning the defective and dangerous propensities of FN 502 Tactical pistols with the intent of inducing customers into purchasing said FN 502 Tactical pistols;

22

f.  Defendant Umarex USA deliberately misled customers and induced them to purchase FN 502 Tactical pistols despite having direct knowledge of their defective and dangerous propensities;

g.  Defendant Umarex USA failed to conduct a reasonably prompt recall of FN 502 Tactical pistols despite having direct knowledge of their defective and dangerous propensities;

123. The aforementioned deceptive trade practices occurred in the course of Defendant Umarex USA's business.

124. The aforementioned deceptive trade practices impacted the public as actual or potential consumers of FN 502 Tactical pistols.

125. As a direct, proximate, and foreseeable result of the Defendant Umarex USA's deceptive trade practices, Plaintiff suffered the injuries, damages, and losses described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for Judgment against Defendants FN America, LLC and Umarex USA, Inc. as follows:

1.  Economic damages, including but not limited to, past and future medical expenses, lost income, and out-of-pocket expenses;

2.  Non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, mental and emotional distress and anguish, inconvenience;

3.  Damages for physical impairment and disfigurement;

4.  All other compensatory damages caused by Defendants' actions and inactions, to be proven at trial;

5.  Three times the amount of actual damages sustained, costs, and attorney fees as provided by C.R.S. § 6-1-113(2).

6.      Pre-judgment and post-judgment interest as provided for by law;

7.      Attorney fees, costs, and expenses of this action as provided for by law; and

8.      For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of December, 2025.

BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.

/s/ *Hannah E. Huston*
Shane C. Fulton, Esq.
Hannah E. Huston, Esq.
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
sfulton@burgsimpson.com
hhuston@burgsimpson.com
*Attorneys for Plaintiff*